***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Berger.
 ***********
The Full Commission finds as facts and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On January 24, 2001 the employee and employer were subject to and bound by the terms and provisions of the North Carolina Workers' Compensation Act, and the employer-employee relationship existed between the employee and the defendant-employer.
2. The defendant-employer is a duly qualified self-insured whose claims are administered by Key Risk Management Services, Inc.
 ***********
The undersigned further finds as facts the following, which were entered into by the parties as:
 STIPULATED FACTS
1. On January 24, 2001, Christopher T. Beane ("Beane"), a thirty-four (34) year-old police officer with the Greensboro Police Department died as a result of injuries sustained in a motor vehicle accident when his 1994 blue Toyota pickup truck collided with another vehicle on Finch Farm Road (RR 1547) near Trinity in Randolph County, North Carolina. Beane was off duty and on his way home from work at the time of the collision.
2. Beane was employed by the Greensboro Police Department as a third shift patrol officer, having been with the department since March 1999. Beane's duties included responding to reported crimes and calls for service.
3. Beane regularly worked a 10.5-hour shift from 8:30 p.m. until 7:00 a.m., on a rotating schedule for four days on, four days off.
4. It is not unusual for officers with the Greensboro Police Department to work overtime, i.e., come in early or work over their 10.5 hour shift. During the period of March 5, 2000 through January 23, 2001, Beane had worked overtime (more than 10.5 hours per shift) on thirty-two (32) occasions. During the period of November 1, 2000 through January 23, 2001, the other four members of Beane's squad (D.D. James, J.M. Atkins, R.R. Beshears, and A.B. Edwards) worked overtime (more than 10.5 hours per shift) on a total of thirty-two (32) occasions.
5. Officers in the Greensboro Police Department may perform off-duty police work outside of their regular duty hours, but may not work more than 15.5 hours per calendar day in any combination of on-duty or off-duty employment unless warranted by unusual public safety concerns with supervisory approval.
6. Beane's shift on January 23, 2001 was Beane's first scheduled work day after a typical four-day break. Beane awoke between noon and 1:00 p.m. that day, then took his daughter to the doctor and went to the gym. Subsequently, Beane then returned home and took a nap before departing for work. Beane reported to work at 8:30 p.m.
7. At approximately 2:35 a.m. on January 24, 2001, Beane responded to a call involving vandalism along with officers J.J. Atkins, A.B. Edwards, D.D. James, and J.B. Godfrey. Atkins was the first officer on the scene.
8. As a result of that call, Beane assisted the other officers in the arrest of eight individuals who were charged with a total of eighty-eight (88) criminal counts, each charge requiring a warrant and additional paperwork.
9. Following the arrests, Beane and his fellow officers accompanied the arrestees to the Guilford County Magistrate's office for processing.
10. At the Magistrate's office, Beane and Atkins were required to input all pertinent information about the arrests into the computer so that Magistrate Julie Jamison could review it while hearing the officers' recitation of probable cause in order to determine whether to issue an arrest warrant.
11. Magistrate Chuck Alberson came on duty at approximately 7:00 a.m. on January 24, 2001. Magistrate Alberson assisted in hearing probable cause testimony from Officer Beane upon reporting for duty. Magistrate Alberson also observed that Beane was noticeably fatigued.
12. Officers Godfrey and Atkins also observed that Beane was noticeably fatigued while at the Magistrate's office.
13. Sergeant Charles Cherry, Beane's direct supervisor, requested relief for officers Beane, Godfrey and Atkins from the first shift sergeant, Kevin Moore. Officer Darryl McDonald and a trainee were sent to relieve the officers at approximately 7:00 a.m. Because the relief officers were unable to present probable cause testimony to the Magistrate for the arrests, Beane, Godfrey and Atkins were unable to leave, but McDonald and the trainee did assist these officers with necessary paperwork.
14. While at the Magistrate's office, Beane called his wife to inform her that he would be late. Beane also told his wife that he was exhausted.
15. On January 24, 2001, the Greensboro Police Department had in place a Directives Manual containing the policies and guidelines for all Greensboro Police employees, including patrol officers. The Directives Manual contained Section 1.5.23, "Submission of Reports," which reads as follows:
 Employees are responsible for the complete and accurate completion of all reports, forms or other documents required by their duties or competent authority, and are responsible for the timely submission of such documents prior to the end of their duty day unless otherwise directed by current departmental policy, practice, or competent authority.
16. Although officers in Beane's division had been verbally reminded to comply with the directive, police officers on occasion did request and receive permission from their superiors to call in reports or complete them later, after the end of their duty day.
17. Beane left the Magistrate's office at approximately 10:00 a.m. on January 24, 2001 with Godfrey and returned to his station. Officer Atkins continued to work on completion of reports until approximately noon.
18. After removing his personal belongings from the Greensboro Police Department and "checking off" at 10:12 a.m., Beane began the drive home in his personal vehicle. Beane resided at 1123 Plantation Way in Trinity, Randolph County, North Carolina. Beane traveled on Wendover Avenue to U.S. 29 South and then Interstate 85 South to Finch Farm Road towards his home in Trinity.
19. While traveling down Interstate 85 South towards the Finch Farm Road exit, Beane passed a vehicle being driven by Jamie Capehart, who was traveling between 70 and 75 miles per hour. Ms. Capehart saw Beane exit in front of her at Finch Farm Road, and Capehart proceeded to take the same exit. Capehart proceeded to follow Beane down Finch Farm Road, traveling approximately 60 miles per hour, but the distance between her vehicle and Beane's vehicle increased.
20. The accident occurred at approximately 10:45 a.m. when Beane's 1994 Toyota pickup truck ran off the roadway onto the right shoulder and lost control. The vehicle then came back onto the roadway in a right side slide, crossed the center line, and was struck in the right passenger side by a white Ford truck driven by Roby Moretz. Mr. Moretz did not apply his brakes, and there were no skid marks from his vehicle.
21. According to the Medical Examiner, Dr. Marion W. Griffin, Beane died within seconds after the collision as a result of head injuries and a probable broken neck. No autopsy was performed.
22. Mr. Moretz, the driver of the other vehicle, suffered serious injuries in the accident, including a broken neck and a ruptured spleen.
23. Trooper Ken Herring of the Randolph County Division of the North Carolina Highway Patrol investigated the accident. As a result of his interview with Ms. Capehart, Herring estimated that Beane was traveling approximately sixty (60) miles per hour before the collision. The posted speed limit is forty-five (45) miles per hour.
24. Based on his training, experience and observation at the scene, Trooper Herring is of the opinion that the circumstances of the accident were consistent with Beane having fallen asleep at the wheel of his pickup truck. Herring is unable, however, to exclude other possible reasons for Beane running off the roadway.
25. At the time of his death, Beane had no known medical or psychological conditions that would have contributed to his falling asleep at the wheel.
26. The National Highway Traffic Safety Administration (NHTSA) estimates that falling asleep while driving is responsible for at least 100,000 automobile crashes, 40,000 injuries, and 1,550 fatalities each year. In 1996 the United States Congress ordered NHTSA to develop a public education campaign on drowsy driving among noncommercial drivers. NHTSA determined that while everyone is susceptible to drowsy-driving crashes, young people (especially males), shift workers, and people with untreated sleep apnea syndrome and narcolepsy may be at a higher risk. In 1998, NHTSA estimated that there were approximately fifteen million people working non-daytime shifts.
27. In 1999, researchers for the Highway Safety Research Center at the University of North Carolina at Chapel Hill released the results of a study of 1,403 North Carolina drivers who had been involved in motor vehicle crashes. In this study, 467 participants reported that fatigue or falling asleep had been a factor in the collision.
28. Beane was not wearing his seatbelt a the time of the accident, according to Capehart and Trooper P.D. Stalvey, the first officer on the scene. Trooper Stalvey noted that the seatbelt was still coiled and hanging in its proper position on the side door post. Trooper Herring visited the morgue and found no bruises on Beane's body where his seatbelt would have been at the time of the accident.
29. At the time of the accident, Beane was wearing his police uniform. There is no requirement that City of Greensboro police officers wear their uniforms while traveling to and from work. Officers may change out of their uniforms into their street clothes at the station before departing for their commute home.
30. Beane was not compensated in any way by the Greensboro Police Department for time spent commuting to and from work. The Greensboro Police Department did not pay for or furnish Beane's transportation to and from work. Beane received no travel reimbursement, allowance, or any type of remuneration for travel time or expense from the Greensboro Police Department.
31. Beane's average weekly wage on January 24, 2001 was $572.54.
32. Donna L. Beane was married to decedent on March 21, 1986. Donna Beane is the duly qualified administratrix of the estate of Christopher Todd Beane and the guardian ad litem for the couple's two children, Donna Elizabeth Beane (DOB: 1/15/90) and Christopher Todd Beane, Jr. (DOB: 3/5/95).
33. Beane's funeral expenses were $5,278.17.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission makes the following additional:
 FINDING OF FACT
34. There is insufficient evidence of record to support a finding that Beane's performance of his job duties on January 23, 2001 and January 24, 2001 were extraordinary.
 ***********
Based upon the foregoing stipulations, stipulated facts, and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs have failed to show by the greater weight of the evidence that the circumstances of decedent's employment that resulted in the decedent being fatigued when he was traveling from his place of work on January 24, 2001 were extraordinary such that the "special errand" rule should be applied in this case.
2. Decedent's death occurred while he was traveling from work and is therefore not compensable. Royster v. Culp, Inc., N.C. 279, 470 S.E.2d 30
(1996), Goodman v. Mountaire Farms of N.C., ___ N.C. ___, ___ S.E.2d ___ (2002).
 ***********
Based upon the foregoing stipulations, stipulated facts, findings of fact, and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiffs' claim for benefits under the Workers' Compensation Act must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of January 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER